# Redbird Farm, Inc. *vs.* Providence Live Poultry Company, Inc.

APRIL 29, 1940.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J.   This action of the case in assumpsit was tried before a justice of the superior court and a jury and resulted in a verdict for the plaintiff.

The case is here on the defendant's bill of exceptions which contains the following exceptions:  First:  To the

denial by the trial justice of its motion for a new trial; second, to his refusal of certain requests to charge; third, to his denial of its motion for a directed verdict; and fourth, to his refusal to strike out the testimony of George Hagopian.

The plaintiff is a Massachusetts corporation, engaged in the business of raising fowl for the poultry market, and is located in the town of Wrentham in that state. George Hagopian started this business in 1910 and is now president and treasurer of the corporation. Under his management plaintiff's business has grown to great proportions, and he claims that it is now the largest of its kind in the world.

The defendant is a Rhode Island corporation, in the city of Providence in this state, engaged in buying and selling live poultry. The defendant, up to the time of trial, had done business with the plaintiff for the preceding twenty-five years, often buying from the plaintiff large consignments of fowl. Until 1936 defendant acted through Abraham Awerman, but after his death in that year, his son, Gustave Awerman, took over the management of the defendant's business.

On September 19, 1938, at plaintiff's farm in Wrentham, George Hagopian and Gustave Awerman discussed the sale of plaintiff's entire stock of one-year old Rhode Island Red fowl, amounting in all to about eighteen thousand. It is in the course of this discussion that Hagopian claims an oral contract was entered into on behalf of the plaintiff and defendant for the sale to the defendant of this entire stock. Hagopian's testimony as to what was agreed upon in that discussion was admitted over the objection of the defendant, who claimed that it was inadmissible under the parol evidence rule. Defendant also requested the court to instruct the jury to disregard this testimony.

According to Hagopian, it was then and there orally agreed that the defendant would take the entire stock during the Jewish holidays, a three or four weeks period beginning shortly after the date of the agreement, at a price of three and one half cents under the top New York quotation for the date of delivery or for the following date at plaintiff's option, providing such quotation was twenty-one cents or less; and, if the New York top quotation were more, defendant was to pay four cents under such top quotation. It was also agreed that defendant was to be permitted to select birds and to throw out any "not suitable for market"; and plaintiff was to be permitted to hold out, but not beyond the time of the contract, such birds as were still laying.

Gustave Awerman testified for the defendant that the discussion on the 19th was not as Hagopian related it, but was merely as to the outright purchase of a load of fowl at a cash price, and that the purchase which was discussed was made on the next day and on terms as appears from a written slip delivered to plaintiff's representative at the farm and signed by him and also by defendant's representative, who took delivery of the fowl purchased. This slip was admitted in evidence as an exhibit and is as follows.

"Keep this slip. It is the only itemized bill you will receive.

Providence Live Poultry Co., Inc.

Providence, R. I. Sept. 20, 1938.
Bought of...................Red Bird Farm
Address ...................Wrentham, Mass.
Fowl....8425....@17½....$1474.38
If market does 21c....3-½c below top   if 22c or more 4c below top Wednesday.

Paid Check

Received Payment......M. Hagopian
Buyer......Tony"

Awerman also testified that another purchase of fowl was made in the same way, delivery of which was taken on September 23, 1938 and evidenced by another written slip that is in evidence as an exhibit as follows.

"Keep this slip. It is the only itemized bill you will receive.

Providence Live Poultry Co., Inc.

Providence, R. I. Sept. 23, 1938.
Bought of... ............. Red Bird Farm
Address ....................

Chickens.... 8,000 @ 17½ ...$1400.00
Paid by Check
Received Payment..... M. Hagopian
Buyer......Tony Zoglio."

Although Awerman denied that there was any agreement to take plaintiff's entire stock under the terms and conditions as testified by George Hagopian, he did not give a satisfactory explanation as to when the price of the load thus delivered and paid for on September 23, 1938 was agreed upon, if it was not part of the oral understanding of September 19, 1938, as thus testified to by Hagopian. To corroborate his denial he produced Joseph Billincoff, a friend, who accompanied him to the Redbird Farm on the 19th and who testified that he heard the conversation which took place. On the other hand, the plaintiff produced his wife, Beatrice Hagopian, and his brother, Marcus Hagopian, who both testified that there was no one else with Awerman when he was talking with George Hagopian at Redbird Farm on September 19, 1938.

The evidence for the plaintiff further shows that it called upon the defendant to take delivery of the remainder of the stock in accordance with the oral agreement and that defendant refused to do so without giving any reason, except

the general assertion unaccompanied by any proof, that "those birds are not good enough." Thereafter, in seeking to minimize the damages, the plaintiff, because of a fall in the market due to the hurricane of September 21, 1938, was compelled to sell the remaining fowl at a much lower price than that which it would have obtained under its contract with the defendant had the latter not broken its promise.

Defendant's exceptions were not briefed in the separate and distinct manner in which they are set out in its bill of exceptions, but they were all argued more or less together under the following points as stated in its brief: (1) The alleged oral agreement of September 19, 1938 did not constitute a binding contract; (2) If it did, defendant has performed all he promised to do. (3) The slips of September 20, 1938 and September 23, 1938 were written contracts which could not be varied by parol evidence and which, excluding such evidence, entitled defendant to a directed verdict. (4) The slip of September 20, 1938 is an integrated contract and cannot be varied by parol evidence.

At the bottom of these contentions is the fundamental contention that the testimony of George Hagopian, as to what was the agreement entered into between him and Gustave Awerman at the Redbird Farm at Wrentham on September 19, 1938, was inadmissible. This contention was that whatever negotiations were orally concluded on that day were integrated in writing by the slip of September 20, 1938. If this contention is held to be unsound, there remains only one question, namely, whether the trial justice was clearly wrong in approving the verdict of the jury and denying the defendant's motion for a new trial.

We have carefully examined the evidence and we are of the opinion that there is no merit in defendant's first point. The jury was, in our opinion, justified in believing the testimony of George Hagopian as to the substance and effect of his conversation with Gustave Awerman on September 19,

1938, at Redbird Farm rather than Awerman's testimony; and that there was a binding contract entered into between them as representatives of their respective principals on that day.

There is also no merit in the defendant's contention that the written slips of September 20, 1938 and September 23, 1938, were written contracts which could not be altered or contradicted by parol evidence. Clearly they are nothing more than receipts evidencing delivery of the fowl, the price thereof, and payment therefor. Neither their contents nor the evidence of the circumstances of their signing by representatives of the parties establishes them as anything more. They do not come within the scope of *Vaughan* v. *Mason & Sons,* 23 R. I. 348, 50 A. 390, or of *Gardner* v. *Chace,* 2 R. I. 112. Both of those cases were cited by the defendant but they are not in point. The evidence objected to was properly admitted and raised conflicting issues of fact for the jury. Defendant was, therefore, not entitled to a directed verdict.

Defendant, however, contends further that, on the evidence, there was no true contract, as the promises were illusory and that there was no consideration for them. It is argued that, inasmuch as the plaintiff might refuse to sell such fowl as were laying, it could refuse to sell any; and that, as it, the defendant, could refuse to take fowl that were not satisfactory to it, it could refuse to take any. Such unlimited freedom of choice, it argues, is destructive of a true binding contract. If the premise were correct, the stated result would follow, under an established principle of the law of contract. But the premise is not correct, on the facts of the instant case. In our opinion, the evidence here disclosed no such understanding as the defendant asserts. Neither party had an arbitrary and unlimited right to refuse performance of its part of the contract. Each was bound to act reasonably in the premises; defendant could reject

only fowl that were reasonably unfit for the purposes for which defendant contracted to purchase them; and plaintiff could hold out temporarily, but not beyond the term of the contract, fowl that were still laying. This contention is, therefore, also without merit, and defendant accordingly had no right on this ground to a directed verdict.

Defendant, under its second point, contended that the evidence showed that it had performed its promise when it appeared that it had refused to take any more fowl because "they are not good enough". This contention is akin to the one just treated above and rests on the erroneous premise that defendant had an arbitrary freedom of choice to accept or reject any or all of plaintiff's entire stock of fowl included in the contract. Our discussion of the above contention answers this point and hence there is no merit in defendant's contention of performance of the contract on its part.

Defendant's fourth contention that the slip of September 20, 1938 was an integration of the previous oral agreement of September 19, 1938 is untenable, as we have held above that such slip was a receipt and, of course, a mere receipt does not constitute such a writing as to bring it within the principle of the law of contracts which defendant is seeking to have applied under this point.

We have thus considered all of the points contended for by the defendant in its brief and have found each one to be without merit. These four points represent defendant's contentions in support of the four exceptions in its bill of exceptions; hence, those exceptions, for the reasons given above in our treatment of each point, are overruled.

There is no error, and the case is accordingly remitted to the superior court for the entry of judgment on the verdict.

*Edward T. Richards, Bancroft Littlefield, Edwards & Angell,* for plaintiff.

*Archie Smith, Mortyn K. Zietz,* for defendant.